ORIGINAL



1  CHARLES E. HILL (SBN #176751)
   Email: charlesernesthill@gmail.com
2  180 E. Bonita Avenue #310
   Pomona, CA  91767
3  Telephone (909) 732-3324

4  Attorney for Relator
   CHARLES E. HILL, In Pro Per

5

6

7

8     LA CV17 01145-PA-FFMx

   **UNITED STATES DISTRICT COURT**
9

10

11    **CENTRAL DISTTRICT OF CALIFORNIA**

12

13  CHARLES E. HILL, ex rel on behalf )   Case No.:
    of the United States of America, In )
14  Pro Per                            )
                                       )   COMPLAINT FOR DAMAGES
15                         Relator,    )
                                       )   **FILED UNDER SEAL**
16      vs.                            )   **PURSUANT TO 31 U.S.C. §**
                                       )   **3730(b)(2)**
17                                     )
18  HARVARD UNIVERSITY, an un-         )   DEMAND FOR JURY TRIAL
    known entity; MARK                 )
19  ZUCKERBERG, an individual;         )
    EDUARDO SAVERIN, an                )     1. Violation of the False Claims
20  individual; and DUSTIN             )        Act
    MOSKOVITZ, an individual,          )
21  ANDREW MCCOLLUM, an                )     2. Unjust Enrichment
    individual, CHRISTOPHER            )
22  HUGHES, an individual,             )
    FACEMASH, an unknown entity;       )
23  FACEBOOK, INC., a Delaware         )
    Corporation, and                   )
24                                     )
    DOES 1-30, inclusive,              )
25                                     )
26                         Defendants  )



27

28  _____

                          - 1 -

Relator CHARLES E. HILL ("Relator"), ex rel. on behalf of the United States of America, alleges:

## JURISDICTION AND VENUE

1.     Jurisdiction is conferred on this Court by the False Claims Act, 31 U.S.C. § 3729 et seq. ("FCA") and 28 U.S.C. § 1331.  Venue is proper in the Central District of California because a substantial part of the events and omissions giving rise to the Relator's claims occurred in this district.

## PARTIES

2. Relator is a resident of Los Angeles County, California.  Relator is an attorney licensed to practice law in California.  Relator is handling the filing of the initial Complaint.  Relator is in the process of obtaining new counsel, and is expected to have the counsel in place by the time the federal government makes its decision on whether to intervene.

3. Defendant Harvard University ("Harvard") is a private university located in Cambridge, Massachusetts, and is a business entity of unknown organization.

4. Defendants Mark Zuckerberg, Dustin Moskovitz, and Andrew

**COMPLAINT FOR DAMAGES**

McCollum are residents of Santa Clara County, California. Defendant Christopher Hughes is a resident of New York. Defendant Eduardo Saverin is a resident of Singapore. Collectively, these five Defendants will be called "the individual Defendants."

5. Defendant Facemash, is a business entity of unknown organization. Defendant Facebook, Inc. is a corporation incorporated in Delaware, with principal offices in Menlo Park, California.

6. The true names and capacities of Defendants named herein as DOES 1-30 are unknown to Relator who therefore sues said Defendants, and each of them, by such fictitious names. Relator will amend the Complaint to show their true names and capacities when they have been ascertained. Relator is informed and believes and thereon alleges that each of said fictitiously named Defendants is responsible in some manner for the occurrences herein alleged, and that the fraud committed against the United States of America as herein alleged, and the unjust enrichment, were proximately caused by such Defendants' acts and/or omissions.

7. Relator is informed and believes and thereupon alleges that each

/ / /

COMPLAINT FOR DAMAGES

Defendant entered into a conspiracy and agreement with the other Defendants, and/or subsequently joined said conspiracy and ratified the prior acts and conduct of the Defendants who had previously entered into said conspiracy, and, upon information and belief, alleges that all Defendants have knowingly, maliciously, and willfully, entered into said conspiracy, which continues until this day.  The purposes of this ongoing conspiracy include, but are not limited to, the wrongs alleged herein.

8. All Defendants' acts and failures to act as alleged herein were perpetrated in furtherance of the ongoing conspiracy.  All of the Defendants, including the Doe Defendants, are alleged to be co-conspirators with each other, in that each agreed to participate and each participated in the furtherance of the objective of a civil wrong, and criminal enterprise, as alleged in the Complaint.

9. Relator is informed and believes and thereupon alleges that at all times material herein, each of the Defendants was completely dominated and controlled by his or her co-Defendants, each was the agent, representative and alter ego of the others, and all aided and abetted the wrongful acts of the others.

**COMPLAINT FOR DAMAGES**

10.     At all times herein mentioned, Defendants and DOES 1-30, and each of them, were the agents, ostensible agents or employees, employees, joint ventures, shareholders, partners, and alter egos of each of the other Defendants, and each of them, and in doing the things hereinafter mentioned were acting within the course and scope of their authority as such agents, employees, shareholders, joint ventures, partners, and alter egos and with the knowledge, ratification, approval and/or consent of their co-Defendants.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE FALSE CLAIMS ACT

### (Against All Defendants and Does 1-30)

11.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 10 above as though fully set forth.

### Factual Background

12.     In the school year for 2003 and 2004, Harvard participated in a federal program under the Clery Act, 20 U.S.C. § 1092(f).  The Clery Act required all institutions who receive federal financial aid funds from the U.S. Government to report certain crime statistics in a crime log.  These

COMPLAINT FOR DAMAGES

crime statistics were then shared with the federal government, so that they could be tracked and monitored.  The crime statistics would also be shared with the public, existing students on the campus, and prospective students.

13.     In October of 2003, Harvard became aware of crimes that were committed by one of its students that fell within the category of crimes that must be reported under the Clery Act.  The student was defendant Mark Zuckerberg.  Zuckerberg committed three burglaries by breaking into the residence houses named Quincy, Currier, and Winthrop.  The object of the burglaries was to steal data on the students who resided in each residence house that were stored in a protected computer system in each of the three houses, respectively.  As will be discussed infra, Saverin said Zuckerberg committed these crimes.  Zuckerberg also hacked into the main computer system of Harvard and obtained student data and other information that was privileged.  Zuckerberg admitted to hacking into the Harvard system.  This admission was made at a disciplinary hearing that Harvard held on November 17, 2003.  See Kaplan, Katherine, "Facemash Creator Survives Ad Board," *The Harvard Crimson*, Nov. 18, 2003.

14.     Instead of suspending Zuckerberg, Harvard gave out a slap on

the wrist.  Harvard made the conscious decision not to report Zuckerberg's criminal actions to the federal government.  The criminal actions were the following:  (1) the computer hacking of the main Harvard computer system, (2) the hacking into the three computer systems of the three residence houses, and (3) the three burglaries.  On or about December 29, 2016, Relator checked the Clery Act website under Harvard, and discovered that there is no record of any burglaries being reported at the campus residences at Harvard during the October to November 2003 timeframe.

15.     On information and belief, Harvard engaged in a conspiracy to hide the crimes for present and future benefits.  The computer data stolen by Zuckerberg was used in a website called Facemash created by Zuckerberg that became an overnight Internet sensation.  The website was so popular, the activity overloaded Harvard's computer systems.  Harvard administrators knew about this popular website before the administrative hearing was held.  And, Harvard wanted a piece of this action.  With the stolen computer data, Zuckerberg was able to directly and indirectly improve his website by writing additional programs and coding.  The other

COMPLAINT FOR DAMAGES

individual Defendants participated with Zuckerberg in this process.

16.     In the summer of 2004, Zuckerberg left for California, and the Facemash program was relaunched as Facebook, Inc.

17.     Fast forward thirteen years.  In late 2016, Zuckerberg and Harvard entered into negotiations concerning a donation Zuckerberg wanted to make to Harvard.  This is the return on the crime, or payout, that Harvard had been expecting and waiting for all these years.   On information and belief, the donation has not occurred.

18.     The applicable statute of limitations for a qui tam claim is six years ("SOL"). 31 U.S.C. §3731(b)(1) However, under the last overt act doctrine, the SOL is tolled until the last overt act is completed.  Here, the last overt act is the payment back to Harvard, which has not occurred yet. Therefore, the SOL has not expired – in fact, it hasn't even begun to run.

19.     Since November of 2003, Zuckerberg has been involved in many civil lawsuits, and on information and belief, in each of these cases a confidentiality agreement was entered into by the parties protecting Zuckerberg's student records from being made public.   These student records would reflect the three burglaries as well as the hacking of the

protected computer systems.   This blocking of the release of the information would trigger equitable estoppel principles, which would toll the statute of limitations. A party, who on the one hand hides information that is needed for purposes of providing information on a cause of action, cannot turn around, and on the other hand, claim the clock has run out on a statute of limitations.

20.     The Winklevoss twins attended Harvard at the same time as Zuckerberg, and the twins had hired Zuckerberg to do some programming on a social media site.   The business deal fell through and the Winklevosses sued Zuckerberg in Massachusetts federal court on September 2, 2004 (Case No. 2004-11923), and that case was consolidated with some other cases, including one in California, which went through many appeals, and a final decision from the Ninth Circuit came out on June 23, 2011.   Facebook supposedly was launched by Zuckerberg in February 2004.   Note that only 6 months elapsed between the launch of Facebook in February and the filing of the lawsuit by the Winklevosses in September of the same year.

21.     On June 30, 2010, Paul Ceglia filed a civil lawsuit against

COMPLAINT FOR DAMAGES

Zuckerberg, and on information and belief, Relator contends a confidentiality agreement was entered into. The civil case is Ceglia v. Zuckerberg et al, U.S. District Court, Western District of New York, No. 10-00569. On March 25, 2014, a federal judge dismissed Ceglia's civil case.

22.     There is an overlap in time between the length of the Winklevoss' confidentiality agreement and the length of the Ceglia confidentiality agreement. By combining the two agreements, there would be tolling for a time period stretching from September 2, 2004 all the way until March 25, 2014 (i.e., the date the Winklevoss suit began and the date the Ceglia suit ended). This period calculates out to 115 months. Assuming the statute of limitations started at the time of the disciplinary hearing on November 17, 2003, thirteen years and three months have elapsed to the present time for a total of 159 months. Subtracting from 159 months the amount of the tolling period, which is 115 months, leaves 44 months. This is the amount of time that has expired on the statute of limitations without taking into consideration any other tolling theories. Since the qui tam SOL is six years, or 72 months, and by subtracting from that amount the 44 months

that has arguably expired, there are 28 months remaining before the SOL expires.

23.     Courts can toll the running of the SOL until such time as the plaintiff knew or reasonably should have known of the facts underlying his or her cause of action.  Further, equitable tolling is read into every federal statute of limitations.  See *United States ex rel. Hyatt v. Northrop Corp.*, 91 F.3d 1211, 1216 (9th Cir. 1996); *United States v. Locke*, 471 U.S. 84, 94 n. 10, 105 S.Ct. 1785, 1792 n. 10, 85 L.Ed.2d 64 (1985) ("Statutory filing deadlines are generally subject to the defenses of waiver, estoppel, and equitable tolling.").

24.     Here, there would be tolling under two equitable theories:  (1) the last overt act doctrine; and (2) the three different confidentiality agreements signed by Zuckerberg with the Winklevosses and Paul Ceglia. When Zuckerberg signed the confidentiality agreements, Zuckerberg was acting on behalf of the other Defendants.

25.     In qui tam cases, federal courts recognize that the last overt act doctrine can toll the statute of limitations.  See *U.S. ex rel. Griffith v. Conn.*, 117 F.Supp.3d 961, 987 (E.D.Ky 2015).  Since the transfer of the

COMPLAINT FOR DAMAGES

illegal funds from Zuckerberg back to Harvard has not yet occurred, Relator contends that the last overt act has not occurred.  Therefore, the SOL has not started to run.

26.   Second, under the confidentiality agreement theory, Zuckerberg and Harvard have blocked the release of the information on the burglaries that is contained in Zuckerberg's student files.

> "Equitable tolling may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim . . . If a reasonable plaintiff would not have known of the existence of a possible claim within the limitations period, then equitable tolling will serve to extend the statute of limitations for filing suit until the plaintiff gathers what information he needs." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1176 (9th Cir. 2000) (internal citation omitted).

27.   Fraudulent concealment overlaps with equitable estoppel, which "may come into play if the defendant takes active steps to prevent the plaintiff from suing in time." *Johnson v. Henderson*, 314 F.3d 409, 414

1  (9th Cir. 2002) (internal quotation marks omitted).  Thus, the blocking of

2

3  the release of the student records by the Defendants that would

4  affirmatively show and reveal the burglaries, which is vital information

5

6  bearing on the existence of the qui tam claim, triggers both equitable

7  tolling and the fraudulent concealment doctrine.   Accordingly, under

8

9  equitable principles this would be enough to toll the statute of limitations.

10     28.     Zuckerberg kept an on-line diary of the start of Facemash.  On

11

12  October 29, 2003, Zuckerberg stated on his diary posts that he had the

13

14  student data for nine of the houses, and did not have the student data for

15  the remaining three (Quincy, Winthrop, and Currier).  By Halloween, the

16

17  bewitching day, on October 31, 2003, Zuckerberg implicitly stated in his

18  diary that he had all of the data because the website was now complete.

19

20  We have seen this play out before - from Shakespeare's *The Tragedy of*

21  *MacBeth*, Act IV, Scene 1, "Double, double toil and trouble; Fire burn and

22

23  caldron bubble.", and from Walter Scott's play *Marmion*, Canto VI, XVII:

24  "Oh! What a tangled web we weave, when first we practice to deceive."

25

26     29.     Harvard released very little information on the results from the

27  November 17, 2003 adminstrative board hearing.  Zuckerberg was

28

**COMPLAINT FOR DAMAGES**

disciplined but only in a minor fashion.  Zuckerberg was not kicked out of the university.  On information and belief, Harvard did not turn over any information to the federal government or to local or state police authorities that Zuckerberg had committed any crimes.  Under the Clery Act, Harvard was required to record the three burglaries and computer hacking in a crime log, and this information is then given to the federal authorities in exchange for participating in federal financial aid programs.

Harvard decided to opt out of the requirements of the Clery Act.  This was not a minor contact breach.  Harvard placed the interests of one student Zuckerberg ahead of the interests of the other students.

30.    Facebook has grown into a large corporation with a present net worth in excess of $360 billion dollars.  Zuckerberg has a present net worth in excess of $60 billion based upon primarily his ownership of stock in Facebook.  The other defendants, Moskovitz, Saverin, McCollum, and Hughes have each shared in the financial success of Facebook.   On information and belief, Moskovitz, McCollum and Hughes knew or should have known that Zuckerberg committed three burglaries to obtain the missing data.  All three of them were roommates of Zuckerberg and

Saverin.  On information and belief, Moskovitz, McCollum and Hughes were aware of Saverin's accusations against Zuckerberg and the burglaries, but have not confirmed or denied the accusation; instead, Moskovitz, McCollum and Hughes have decided to remain silent and reap the financial benefits from the ill-gotten gains.

31.    The Defendants violated the False Claims Act under an implied certification theory and promissory estoppel theory.  Beginning after November 17, 2003, Harvard certified on an annual basis that they had complied with the provisions of the Clery Act, when they knew this statement was untrue.  From 2003 to the present, Harvard has received hundreds of millions of dollars in financial aid from the federal government.  Harvard is not entitled to this money because they had previously opted out of the Clery Act program in order to protect their joint venture and conspiracy with the individual Defendants.  Harvard has flouted the law at will, and made a mockery of the criminal reporting system, which is a major component of the Clery Act.  Ultimately, Harvard decided who would be prosecuted under the law.  Harvard completely circumvented the judicial system and became judge and jury.

32.     Once the money started rolling in from Facebook, Saverin and Zuckerberg later had a falling out over the ownership of Facebook.   In starting the company back at Harvard, Saverin accused Zuckerberg of burglarizing three of the residence halls and hacking the protected computer systems therein in order to obtain the data needed for the Facebook program.   See *The Accidental Billionaires: The Founding of Facebook: A Tale of Sex, Money, Genius and Betrayal* written by Ben Mezrich (Anchor Books 2010) (p. 41, "Behind every great fortune, there lies a great crime."), which was the book that led to the award-winning movie *The Social Network* (Columbia Pictures 2010).

33.     According to the book's author, Ben Mezrich, Saverin has not changed his position on the burglaries committed by Zuckerberg.   To this very day, Zuckerberg claims this is all fiction.   This unverified allegation of the three burglaries made by Saverin is public information.

34.     In April to May of 2013, Relator purchased a copy of the book on Amazon, read the book, and also saw the movie, *The Social Network*. At that time, Relator became aware of Saverin's claims against Zuckerberg.

**COMPLAINT FOR DAMAGES**

35.    On or about November 3, 2016, Relator saw an article on the Internet on the subject of the largest fine ever issued for a Clery Act violation.   See Saul, Stephanie, "Penn State Faces Record Fine in Sandusky-Related Case," (New York Times, Nov. 3, 2016).   According to the article, the federal government fined Penn State nearly $2.4 million for failing to comply with the Clery Act.   The university failed to alert the public about Mr. Sandusky's conduct and other campus dangers. Similarly, Harvard failed to alert the public about Zuckerberg's conduct, and the conspiracy the university was involved in to cover it up.   On or about November 25, 2016, Relator also read a second article on the same subject printed by the Pittsburgh Post-Gazette written by Bill Schackner, "Penn State Will Pay $2.4 Million For Not Disclosing Crime Statistics."

36.    On December 29, 2016, a check of the Clery Act website by the Relator showed there were no records listed for disciplinary hearings – student housing in the year 2003.  Relator went on the Clery Act website, called "CSS - Campus Safety and Security Actions webpage for U.S. Dept. of Education", then searched for the selected university, Harvard, and under the category "Disciplinary Board - Student Housing (for crimes that

**COMPLAINT FOR DAMAGES**

occurred on Student Housing)", Relator saw that there was no information posted for the year 2003 for Harvard.  Harvard had a 2003 disciplinary hearing, and yet the statistic is missing from the Clery website.[1]

### Theory of Liability

37.   The FCA provides for liability premised on whether a person: (1) knowingly presents, or causes to be presented, a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to be made or used, a false record or statement material to a false or fraudulent claim; (3) conspires to commit a violation of the FCA; (4) knowingly delivers, or causes to be delivered to the Government less than all of the money or property due to the Government; (5) certifies the amount or property to be used by the Government without completely knowing that the information on the receipt is accurate; (6) knowingly buys or receives public property from the Government from someone not authorized to sell the  property; or (7) knowingly makes, uses, or causes to be made or used, a false record or statement regarding an obligation to pay or transmit money or property to the Government, or knowingly conceals or decreases

---

[1] Also, for the categories of "Larceny-Theft" and "Destruction/Damage/Vandalism of Property" there were no records.

**COMPLAINT FOR DAMAGES**

an obligation to pay or transmit money or property to the Government. 31 U.S.C. § 3729(a)(1)(A)–(G). Here, the theory of liability is under a false certification theory, express or implied, and a promissory estoppel theory.

38.     The Defendants violated subsection (1), (2), and (3) of 28 U.S.C. § 3729(a)(1)(corresponds to letters A-C). Under subsection (1), the Defendants knowingly presented a false or fraudulent claim for payment or approval by certifying Harvard was in compliance with the Clery Act. Under subsection (2), the Defendants made a false record or statement that was material to a false or fraudulent claim because they certified there were no burglaries at the Harvard campus in November 2003. Under subsection (3), the Defendants engaged in a conspiracy to block the release of the information on the burglaries and the computer hacking of protected computer systems. The Defendants agreed Harvard would only be a participant in the Clery program in form only. The Defendants would control what crime statistics were reported to the authorities, and if any at all. The Defendants flouted the law.

39.     Computer hacking of a protected computer system is a serious federal crime for such conduct violates the Computer Fraud and Abuse Act

("CFAA"), 18 U.S.C. § 1030, which carries a cumulative maximum penalty for each count of $1 million in fines, 35 years in prison, asset forfeiture, restitution, and supervised release.  Here, there are four counts since Zuckerberg committed four separate hacking incidents (1 to Harvard's main computer system, and 3 to the three residence houses he had to first burglarize, Quincy, Currier, and Winthrop).

40.    An example of how serious this federal statute is taken by the federal government, in 2011, another student, Aaron Swartz, violated the CFAA.  Swartz committed burglary and broke into a protected computer system at the Massachusetts Institute of Technology, which is located in Cambridge and in close proximity to Harvard.  Swartz was caught by a Secret Service Agent, and was prosecuted under the CFAA.  While Swartz was out on bail awaiting the start of the criminal trial in federal court, Swartz hung himself. So, in sum, we have a tale of two universities, a tale of two students, and a tale of two vastly different outcomes.

## The FCA's Notice Requirements Were Met Prior To Filing

41.    Since the new information the Relator has provided arguably adds to existing public information provided by Saverin, Relator was

COMPLAINT FOR DAMAGES

required to notify the authorities of the information before filing the complaint.  See 31 U.S.C. § 3730(e)(4)(B)   On February 10, 2017, Relator served a disclosure statement on the U.S. Attorney's Office in Los Angeles, CA containing the information to support the qui tam claim.

<u>Damages</u>

42.     The FCA was violated for each and every student who had their private information stolen from the burglary and hacking of the computers.  For each student, there is one violation.  The maximum statutory penalty is $11,000 per violation, and the total number of violations would await further proof.

43.     The conspiracy violated the CFAA, which has as a remedy asset forfeiture.   Instead of going to jail for 140 years, the Defendants face monetary penalties under the False Claims Act.   The fruits of the poisonous tree are required to be turned over to the federal government.  Hence, the Court should place a constructive trust over the assets of the Defendants.

44.     The government's interest arises pursuant to the relation back doctrine set forth in 21 U.S.C. § 853(c), where the government's interest in

the property is deemed to have vested at the moment the crime occurred. The forfeiture statute requires that any property constituting, or derived from, the crime is subject to forfeiture.   Also, any proceeds the person obtained, directly or indirectly, as the result of such violation are subject to forfeiture.

45.     Here, the stolen data was used directly and indirectly in the structure of the software, and in updating of the software for the website, first at Facemash, and then at Facebook.   Under the asset forfeiture provisions, any of the property used to commit the crime would be subject to forfeiture.   Hence, Zuckerberg's computer, with all of its storage and memory that was used to hack into the servers in the residence halls and into the Harvard computer system, would be subject to forfeiture.   All of Defendants' computers would also be subject to forfeiture.

46.     The False Claims Act (FCA) provides that the defendant must pay "three times the amount of damages which the Government sustains because of the act of that person." 31 USCA § 3729(a); 28 CFR § 85.3(9). Therefore, because this conspiracy was so egregious, and involved cheating thousands of students out of the privacy of their student data in

order to receive an investment in a multi-billion dollar Internet startup (which controls a major portion of the Internet activity), and there was an extensive and methodical cover-up, the Court should award the maximum penalties including treble damages.

47.     Relator seeks a constructive trust over the property involved in the conspiracy, including but not limited to, all of the Facebook software, hardware, intellectual property, and data, all of the Facemash software, hardware, intellectual property, and data, and all of the individual Defendants' software, hardware, intellectual property, and data that can be traced to the conspiracy.

## SECOND CAUSE OF ACTION – UNJUST ENRICHMENT

(Against All Defendants and Does 1-30)

48.     Relator realleges and incorporates by reference the allegations contained in paragraphs 1 through 47 above as though fully set forth.

49.     Defendants received a benefit and have unjustly retained the benefit at the expense of another – the federal government.    The Defendants received a benefit from the financial aid funds Harvard received even though Harvard had opted out of the Clery Act.    The

Defendants also received a benefit when the crimes were not reported to the federal government or to the Clery Act website.  This allowed their conspiracy to continue, without any arrests being made, and which resulted in the launch of Defendant Facebook.  Further, the Defendants have unjustly retained the benefit at the expense of the federal government.

50.    The government has an interest in all that was created by the burglaries and hacking into computer systems.  The government's interest arises pursuant to the relation back doctrine set forth in 21 U.S.C. § 853(c). Relator seeks a constructive trust over the property involved in the conspiracy, including but not limited to, all of Facebook's assets, including but not limited to, software, hardware, intellectual property, and data, all of the Facemash assets, including but not limited to, software, hardware, intellectual property, and data, and all of the individual Defendants' software, hardware, intellectual property, and data that can be traced to the conspiracy.

51.    Alternatively, Relator is entitled to receive restitution of the benefits unjustly retained.

**COMPLAINT FOR DAMAGES**

WHEREFORE, Relator respectfully prays that the Court enters judgment against Defendants, and each of them for:

1. Civil penalties fixed by statute pursuant to the FCA, 31 U.S.C. § 3729(a)(1);

2. Restitution;

3. A constructive trust over all of the Facebook assets, software, computers, website, intellectual property, and data, and any of its predecessors, including but not limited to Facemash, successors, joint ventures, investments, or spin-offs;

4. A constructive trust placed over all of the individual Defendants' assets, including software, hardware, intellectual property, and data according to proof;

5. Treble damages according to proof;

6. Twenty-five percent of the recovery should be awarded to the Relator;

7. Reasonable attorney's fees and costs;

/ / /

COMPLAINT FOR DAMAGES

8. Such other and further relief as the Court deems just and proper.

Dated:  February *11*, 2017

*Charles E. Hill*
_____
Charles E. Hill
Attorney for Relator
Charles E. Hill, In Pro Per

**COMPLAINT FOR DAMAGES**

1

## DEMAND FOR A JURY TRIAL

2

3       Relator Charles E. Hill hereby demands a jury trial.

4

DATED: February _11_, 2017

5

6

7                                             _Charles E. Hill_

8                                             Charles E. Hill
                                              Attorney for Relator
9                                             Charles E. Hill, In Pro Per

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**COMPLAINT FOR DAMAGES**

## DECLARATION OF CHARLES E. HILL

The complaint being filed with the Court under seal is governed by the provisions of the False Claims Act, 31 U.S.C. § 3729 et seq.   The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendants until the court so orders. 31 U.S.C. § 3730(b)(2)

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct.

Executed on February _11_ , 2017

_Charles E. Hill_
Charles E. Hill
Attorney for Relator
Charles E. Hill, In Pro Per

**COMPLAINT FOR DAMAGES**

ORIGINAL

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

| **I. (a) PLAINTIFFS** ( Check box if you are representing yourself ☒ ) | **DEFENDANTS** ( Check box if you are representing yourself ☐ ) |
|---|---|
| CHARLES E. HILL | HARVARD UNIVERSITY, MARK ZUCKERBEG et al. |

| **(b)** County of Residence of First Listed Plaintiff  LOS ANGELES<br>*(EXCEPT IN U.S. PLAINTIFF CASES)* | County of Residence of First Listed Defendant  _____<br>*(IN U.S. PLAINTIFF CASES ONLY)* |
|---|---|

| **(c)** Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information.<br><br>CHARLES E. HILL ESQ., 180 E . BONITA AVENUE #310, POMONA, CA  91767<br>TELEPHONE (909) 732-3324 | Attorneys *(Firm Name, Address and Telephone Number)* If you are representing yourself, provide the same information. |
|---|---|

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☒ 3. Federal Question (U.S. Government Not a Party)
- ☐ 4. Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES**-For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

- ☒ 1. Original Proceeding
- ☐ 2. Removed from State Court
- ☐ 3. Remanded from Appellate Court
- ☐ 4. Reinstated or Reopened
- ☐ 5. Transferred from Another District (Specify)
- ☐ 6. Multidistrict Litigation - Transfer
- ☐ 8. Multidistrict Litigation - Direct File

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☒ Yes ☐ No  (Check "Yes" only if demanded in complaint.)

**CLASS ACTION under F.R.Cv.P. 23:** ☐ Yes ☐ No   ☐ **MONEY DEMANDED IN COMPLAINT:** $ _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
31 U.S.C § 3729 et seq. - False Claims Act

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | REAL PROPERTY CONT. | IMMIGRATION | PRISONER PETITIONS | PROPERTY RIGHTS |
|---|---|---|---|---|---|
| ☐ 375 False Claims Act | ☐ 110 Insurance | ☐ 240 Torts to Land | ☐ 462 Naturalization Application | **Habeas Corpus:** | ☐ 820 Copyrights |
| ☒ 376 Qui Tam (31 USC 3729(a)) | ☐ 120 Marine | ☐ 245 Tort Product Liability | ☐ 465 Other Immigration Actions | ☐ 463 Alien Detainee | ☐ 830 Patent |
| ☐ 400 State Reapportionment | ☐ 130 Miller Act | ☐ 290 All Other Real Property | | ☐ 510 Motions to Vacate Sentence | ☐ 840 Trademark |
| ☐ 410 Antitrust | ☐ 140 Negotiable Instrument | **TORTS** | **TORTS** | ☐ 530 General | **SOCIAL SECURITY** |
| ☐ 430 Banks and Banking | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | **PERSONAL INJURY** | **PERSONAL PROPERTY** | ☐ 535 Death Penalty | ☐ 861 HIA (1395ff) |
| ☐ 450 Commerce/ICC Rates/Etc. | | ☐ 310 Airplane | ☐ 370 Other Fraud | **Other:** | ☐ 862 Black Lung (923) |
| ☐ 460 Deportation | ☐ 151 Medicare Act | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | ☐ 540 Mandamus/Other | ☐ 863 DIWC/DIWW (405 (g)) |
| ☐ 470 Racketeer Influenced & Corrupt Org. | ☐ 152 Recovery of Defaulted Student Loan (Excl. Vet.) | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 550 Civil Rights | ☐ 864 SSID Title XVI |
| ☐ 480 Consumer Credit | | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 555 Prison Condition | ☐ 865 RSI (405 (g)) |
| ☐ 490 Cable/Sat TV | ☐ 153 Recovery of Overpayment of Vet. Benefits | ☐ 340 Marine | **BANKRUPTCY** | ☐ 560 Civil Detainee Conditions of Confinement | **FEDERAL TAX SUITS** |
| ☐ 850 Securities/Commodities/Exchange | ☐ 160 Stockholders' Suits | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | **FORFEITURE/PENALTY** | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 871 IRS-Third Party 26 USC 7609 |
| ☐ 891 Agricultural Acts | ☐ 195 Contract Product Liability | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 690 Other | |
| ☐ 893 Environmental Matters | ☐ 196 Franchise | ☐ 360 Other Personal Injury | ☐ 440 Other Civil Rights | **LABOR** | |
| ☐ 895 Freedom of Info. Act | **REAL PROPERTY** | ☐ 362 Personal Injury-Med Malpratice | ☐ 441 Voting | ☐ 710 Fair Labor Standards Act | |
| ☐ 896 Arbitration | ☐ 210 Land Condemnation | ☐ 365 Personal Injury-Product Liability | ☐ 442 Employment | ☐ 720 Labor/Mgmt. Relations | |
| ☐ 899 Admin. Procedures Act/Review of Appeal of Agency Decision | ☐ 220 Foreclosure | ☐ 367 Health Care/Pharmaceutical Personal Injury Product Liability | ☐ 443 Housing/Accommodations | ☐ 740 Railway Labor Act | |
| | ☐ 230 Rent Lease & Ejectment | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 445 American with Disabilities-Employment | ☐ 751 Family and Medical Leave Act | |
| ☐ 950 Constitutionality of State Statutes | | | ☐ 446 American with Disabilities-Other | ☐ 790 Other Labor Litigation | |
| | | | ☐ 448 Education | ☐ 791 Employee Ret. Inc. Security Act | |

| **FOR OFFICE USE ONLY:** | Case Number: | LA CV17 01145-PA-FFMx |
|---|---|---|

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA

CIVIL COVER SHEET

**VIII.  VENUE:** Your answers to the questions below will determine the division of the Court to which this case will be initially assigned. This initial assignment is subject to change, in accordance with the Court's General Orders, upon review by the Court of your Complaint or Notice of Removal.

| QUESTION A:  Was this case removed from state court? ☐ Yes ☒ No  If "no," skip to Question B. If "yes," check the box to the right that applies, enter the corresponding division in response to Question E, below, and continue from there. | STATE CASE WAS PENDING IN THE COUNTY OF: | INITIAL DIVISION IN CACD IS: |
|---|---|---|
| | ☐ Los Angeles, Ventura, Santa Barbara, or San Luis Obispo | Western |
| | ☐ Orange | Southern |
| | ☐ Riverside or San Bernardino | Eastern |

| QUESTION B:  Is the United States, or one of its agencies or employees, a PLAINTIFF in this action? ☐ Yes ☒ No  If "no," skip to Question C. If "yes," answer Question B.1, at right. | B.1.  Do 50% or more of the defendants who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question B.2. |
| | B.2.  Do 50% or more of the defendants who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION C:  Is the United States, or one of its agencies or employees, a DEFENDANT in this action? ☐ Yes ☒ No  If "no," skip to Question D. If "yes," answer Question C.1, at right. | C.1.  Do 50% or more of the plaintiffs who reside in the district reside in Orange Co.?  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Southern Division. Enter "Southern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Continue to Question C.2. |
| | C.2.  Do 50% or more of the plaintiffs who reside in the district reside in Riverside and/or San Bernardino Counties?  (Consider the two counties together.)  *check one of the boxes to the right* ➡ | ☐ YES. Your case will initially be assigned to the Eastern Division. Enter "Eastern" in response to Question E, below, and continue from there. |
| | | ☐ NO. Your case will initially be assigned to the Western Division. Enter "Western" in response to Question E, below, and continue from there. |

| QUESTION D:  Location of plaintiffs and defendants? | A.  Orange County | B.  Riverside or San Bernardino County | C.  Los Angeles, Ventura, Santa Barbara, or San Luis Obispo County |
|---|---|---|---|
| Indicate the location(s) in which 50% or more of *plaintiffs who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☒ |
| Indicate the location(s) in which 50% or more of *defendants who reside in this district* reside. (Check up to two boxes, or leave blank if none of these choices apply.) | ☐ | ☐ | ☐ |

| D.1.  Is there at least one answer in Column A? ☐ Yes ☒ No  If "yes," your case will initially be assigned to the SOUTHERN DIVISION. Enter "Southern" in response to Question E, below, and continue from there. If "no," go to question D2 to the right. ➡ | D.2.  Is there at least one answer in Column B? ☐ Yes ☒ No  If "yes," your case will initially be assigned to the EASTERN DIVISION. Enter "Eastern" in response to Question E, below. If "no," your case will be assigned to the WESTERN DIVISION. Enter "Western" in response to Question E, below. ⬇ |
|---|---|

| QUESTION E: Initial Division? | INITIAL DIVISION IN CACD |
|---|---|
| Enter the initial division determined by Question A, B, C, or D above: ➡ | WESTERN ▾ |

| QUESTION F: Northern Counties? | |
|---|---|
| Do 50% or more of plaintiffs or defendants in this district reside in Ventura, Santa Barbara, or San Luis Obispo counties? | ☐ Yes ☒ No |

UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
CIVIL COVER SHEET

**IX(a). IDENTICAL CASES:** Has this action been previously filed **in this court**?    ☒ NO    ☐ YES

If yes, list case number(s):

**IX(b). RELATED CASES:** Is this case related (as defined below) to any civil or criminal case(s) previously filed **in this court**?

☒ NO    ☐ YES

If yes, list case number(s):

**Civil cases** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges.

Note: That cases may involve the same patent, trademark, or copyright is not, in itself, sufficient to deem cases related.

**A civil forfeiture case and a criminal case** are related when they (check all that apply):

☐ A. Arise from the same or a closely related transaction, happening, or event;

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. Involve one or more defendants from the criminal case in common and would entail substantial duplication of labor if heard by different judges.

**X. SIGNATURE OF ATTORNEY
(OR SELF-REPRESENTED LITIGANT):**    *Charles E. Hill*    DATE: 02/10/2017

**Notice to Counsel/Parties:** The submission of this Civil Cover Sheet is required by Local Rule 3-1. This Form CV-71 and the information contained herein neither replaces nor supplements the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. For more detailed instructions, see separate instruction sheet (CV-071A).

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405 (g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405 (g)) |