*O*

ORIGINAL

*Lodged proposed order*

FILED

2017 SEP 20  PM 12: 53

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY _____

1  CHARLES E. HILL (SBN #176751)
   Email: charlesernesthill@gmail.com
2  180 E. Bonita Avenue #310
   Pomona, CA  91767
3  Telephone (909) 732-3324

4  Attorney for Relator
   CHARLES E. HILL, In Pro Per
5

6

7

8
                   UNITED STATES DISTRICT COURT
9
                  CENTRAL DISTTRICT OF CALIFORNIA
10
                        WESTERN DIVISION
11

12

13

14  CHARLES E. HILL, ex rel on behalf of   )  Case No. 2:17-cv-01145-PA-FFM
    the United States of America, In Pro Per )
15                                           )
                                             )  **RELATOR CHARLES E. HILL'S**
16                                           )  **NOTICE OF MOTION AND**
                        Relator,             )  **MOTION FOR RELIEF UNDER**
17       vs.                                 )  **FRCP RULES 59(e) AND 60(b)**
                                             )
18                                           )
19  HARVARD UNIVERSITY et al.                )  Date: November 6, 2017
                                             )  Time: 1:30 p.m.
20                                           )  Courtroom: 9-A
                        Defendants           )  Judge: Hon. Percy Anderson
21                                           )
                                             )
22                                           )  Complaint filed: February 13, 2017
                                             )
23                                           )
                                             )  Filed concurrently with:
24                                           )    1. Declaration of Charles Hill
                                             )    2. [Proposed] Order
25                                           )
                                             )
26                                           )
27                                           )
28                                           )

# TABLE OF CONTENTS

|  | PAGE |
|---|---|
| Notice of Motion and Motion | 1 |
| Local Rule 7-3 Certification | 2 |
| 1.   Under Two Ninth Circuit Cases The  2010 Amendments To The  Public Disclosure Bar Govern A Qui Tam Case Filed in 2017 | 4 |
| 2.   Under The 2010 Amendments The Court Lacks Authority To File A Rule 12(B)(1) Motion Sua Sponte | 7 |
| 3.   The Federal Government Is Prosecuting This Case Due To The Secret Seal They Put In Place And They Have The Power Of Veto | 9 |
| 4.   The Clery Reports, A Book, A Movie, And An Article in The Harvard Crimson Each Fail To Constitute News Media | 13 |
| A.   The Clery Act Reports | 14 |
| B.   The Book of Fiction And The Movie | 16 |
| C.   An Article In The Harvard Crimson | 17 |
| 5.   The Public Disclosure Bar Does Not Apply When The X and Y Factors Are Missing | 18 |

i

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### TABLE OF CONTENTS (Cont.)

|  |  | PAGE |
|---|---|---|
| 6. | There Is Insufficient Evidence For The Government To Have Found Fraud | 20 |
| 7. | A Conspiracy Is A Continuing Offense And Is Not Judged Under The FCA By When The Conspiracy Starts But When The Conspiracy Ends | 22 |
| 8. | Relator Is An Original Source Under The New Definition | 24 |
|  | Conclusion | 25 |

1

## TABLE OF AUTHORITIES

2

3

| FEDERAL CASES | PAGE |
|---|---|
| Allstate Ins. Co. v. Herron,<br>634 F.3d 1101 (9th Cir. 2011) | 3 |
| Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA,<br>No. 14-56382 n.7  (9th Cir. May 11, 2017) | 4, 7 |
| Bateman v. U.S. Postal Serv.,<br>231 F.3d 1220 (9th Cir. 2000) | 3 |
| Drakatos v. RB Denison, Inc.,<br>493 F.Supp. 942 (D.Conn. 1980) | 11 |
| Goldberg v. Kelly, 397 U.S. 254 (1970) | 8 |
| Graham Cty. Soil & Water Conservation Dist.<br>v. U.S. ex rel. Wilson, 130 S.Ct. 1396 (2010) | Passim |
| Hughes Aircraft Co. v. United States ex rel. Schumer,<br>520 U.S. 939 (1997) | Passim |
| Intamin, Ltd. V. Magnetar Technologies Corp.,<br>623 F.Supp.2d 1055 (C.D. Cal. 2009) | 15 |
| Landgraf v. USI Film Products, 511 U.S. 244 (1994) | 23 |
| Mathews v. Eldridge, 424 U.S. 319 (1976) | 9 |
| Prather v. AT&T, INC.,<br>847 F.3d 1097 (9th Cir. 2017) | 10 |
| Schindler Elevator Corp. v. US ex rel. Kirk,<br>131 S. Ct. 1885 (2011). | 19 |

iii

TABLE OF AUTHORITIES (Cont.)

| FEDERAL CASES (Cont.) | PAGE |
|---|---|
| School District No. 1J v. ACandS, Inc.,<br>5 F.3d 1255 (9th Cir. 1993) | 3 |
| Scott v. Kuhlmann, 746 F.2d 1377 (9th Cir. 1984) | 22 |
| Tumey v. Ohio, 273 U.S. 510 (2009) | 9 |
| United States ex rel. Advocates for Basic<br>Legal Equity, Inc. v. U.S. Bank, N.A.,<br>816 F.3d 428 (6th Cir. 2016) | 7 |
| U.S. ex rel. Bogina v. Medline Indus., Inc.,<br>809 F.3d 365 (7th Cir. 2016) | 24 |
| United States ex rel. v. Catholic Healthcare West,<br>445 F.3d 1147 (9th Cir. 2006) | 19, 20 |
| United States v. Fletcher,<br>928 F.2d 495 (2d Cir. 1991) | 6 |
| United States ex rel. Found. Aiding The Elderly v.<br>Horizon W., Inc., 265 F.3d 1011 (9th Cir.),<br>amended on denial of reh'g, 275 F.3d 1189 (9th Cir.2001) | 20, 21 |
| U.S. ex rel. Griffith v. Conn,<br>117 F. Supp. 3d 961 (E.D.Ky. 2015) | 6 |

1

## TABLE OF AUTHORITIES (Cont.)

2

3

| FEDERAL CASES (Cont.) | PAGE |
|---|---|
| U.S. v. Harris, 79 F.3d 223 (2d. Cir. 1996) | 6, 24 |
| U.S. ex rel. Hartpence v. Kinetic Concepts, Inc., 792 F.3d 1121 (9th Cir. 2015) | 11 |
| U.S. ex rel. Hastings v. Wells Fargo Bank, Nat. Ass'n (Inc.), No. CV 12-03624 DDP (SSx), 2014 WL 3519129 (C.D. Cal. July 15, 2014) | 14, 15 |
| United States ex rel. Hong v. Newport Sensors, Inc., No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246 (C.D. Cal. May 19, 2016) | 8, 15, 16, 19 |
| U.S. v. Kiewit Pacific Co., 41 F.Supp.3d 796 (N.D.Cal. 2014) | 24 |
| U.S. ex rel Mateski v. Raytheon Co., 816 F.3d 565 (9th Cir. 2016) | Passim |
| United States v. Salerno, 481 U.S. 739 (1987) | 8 |
| United States ex rel. Williams v. NEC Corp., 931 F.2d 1493 (11th Cir.1991) | 17, 18 |

| STATE CASES | PAGE |
|---|---|
| Livett v. F.C. Financial Associates (1981) 124 Cal.App.3d 413 | 6 |
| Wyatt v. Union Mortgage co. (1979) 24 Cal.3d 773 | 6, 24 |

v

## TABLE OF AUTHORITIES (Cont.)

| STATUTES | PAGE |
|---|---|
| 18 U.S.C. § 1031 | 11 |
| 20 U.S.C. § 1092 | 14 |
| 31 U.S.C. § 3730 | Passim |
| 28 C.F.R. § 540.2 | 12, 17 |

| OTHER AUTHORITIES | PAGE |
|---|---|
| Affordable Care Act | 5, 7 |
| Ben Mezrich, The Accidental Billionaires (Anchor Books 2010) | 13, 16 |
| Clery Act | Passim |
| Clery Act website, https://ope.ed.gov/campussafety/#/. | 21 |
| Due Process Clause | 8 |
| False Claims Act | Passim |
| Federal Rules of Civil Procedure | 3 |
| Federal Rules of Civil Procedure rule 12 | 7 |
| Federal Rules of Civil Procedure rule 15 | 11 |
| Federal Rules of Civil Procedure rule 59 | 3 |
| Federal Rules of Civil Procedure rule 60 | 3 |

**MOTION FOR RELIEF UNDER FRCP RULES 59(e) AND 60(b)**
**CASE NO. 2:17-CV-01145-PA-FFM**

1

<u>TABLE OF AUTHORITIES (Cont.)</u>

2

3

| OTHER AUTHORITIES (Cont.) | PAGE |
|---|---|
| The Harvard Crimson | 13, 17 |
| It's A Mad, Mad, Mad, Mad World (United Artists 1963) | 11 |
| New York Public Library<br>     Website https://www.nypl.org/help/about-nypl/library-lions | 16, 17 |
| New York Times | 13, 17 |
| Patience and Fortitude | 16, 25 |
| Pittsburgh Post-Gazette | 13, 17 |
| The Social Network (Columbia Pictures Oct. 1, 2010) | 13, 17 |
| U.S. Attorneys' Manual (USAM), 9-42.010 | 10 |
| ZeroHedge, Tyler Durden, "Baltimore's Homeless Erect<br>     Modern Day 'Hooverville' Tent City On Front Lawn<br>     Of City Hall" (Aug 17, 2017 6:55 PM) | 11 |

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR RELIEF UNDER FRCP RULES 59(e) AND 60(b)**
**CASE NO. 2:17-CV-01145-PA-FFM**

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE DEFENDANTS HARVARD UNIVERSITY, FACEBOOK, INC., MARK ZUCKERBERG, DUSTIN MOSKOVITZ, and ANDREW MCCOLLUM, PLEASE TAKE NOTICE that on November 6, 2017 at 1:30 p.m., in Courtroom 9A, 9th Floor of the above-captioned Court, located at 350 W. 1st Street, Los Angeles, California 90012, or as soon thereafter as counsel may be heard, Relator Charles Hill (Relator) will and hereby does move for Relief under Federal Rules of Civil Procedure Rule 59(e) and 60(b) on the following grounds:

[1]   Under Two Ninth Circuit Cases The 2010 Amendments To The Public Disclosure Bar Govern A Qui Tam Case Filed in 2017;

[2]   Under The 2010 Amendments The Court Lacks Authority To File A Rule 12(B)(1) Motion Sua Sponte;

[3]   The Federal Government Is Prosecuting This Case Due To The Secret Seal They Put In Place And They Have The Power Of Veto;

[4]   The Clery Act Reports, A Book, A Movie, and An Article in The Harvard Crimson Each Fail To Constitute A Public Disclosure;

[5]   The Public Disclosure Bar Does Not Apply When The X and Y Factors Are Missing;

[6]   There Is Insufficient Evidence For The Government To Have Found Fraud;

[7]   A Conspiracy Is A Continuing Offense And Is Not Judged Under The FCA By When The Conspiracy Starts But When The Conspiracy Ends; and

[8]   Relator Is An Original Source Under The New Definition.

1       This motion is based on this Notice of Motion and Motion, the Memorandum

2   of Points and Authorities set forth below, the Declaration of Charles Hill and

3

4   attached exhibits, and such other submissions or arguments as may be presented to

5   the Court at or before the hearing.

6   ### <u>LOCAL RULE 7-3 CERTIFICATION</u>

7

8       On September 12, 2017, Relator contacted Andrew Kim of the law firm

9   Goodwin Procter, who is counsel for defendant President and Fellows of Harvard

10  College (sued as Harvard University) by telephone, and the parties discussed this

11

12  motion for relief.  Mr. Kim advised that his client Harvard had no reason to stipulate

13  to the motion for relief.  Declaration of Charles Hill (Dec.), ¶ 3.

14      On the same date, Relator contacted Maya Karwande of the law firm Keker,

15  Van Nest, who is counsel for defendants Facebook, Inc., Mark Zuckerberg, Dustin

16

17  Moskovitz, and Andrew McCollum (collectively referred to as Facebook).   Ms.

18  Karwande advised that her clients Facebook had no reason to stipulate to the motion

19

20  for relief.   Dec., ¶ 4.  This motion is made following the conference of counsel

21  pursuant to L.R. 7-3 which took place on September 12, 2017.

22  Dated: September *16*, 2017          Respectfully Submitted,

23

24

25  *Charles E. Hill*

26  Charles E. Hill
    Attorney for Relator
27  Charles E. Hill, In Pro Per

28

- 2 -

## MEMORANDUM OF POINTS AND AUTHORITIES

The Ninth Circuit has set forth the grounds justifying reconsideration under Rule 59(e) of the Federal Rules of Civil Procedure:  "In general, there are four basic grounds upon which a Rule 59(e) motion may be granted: (1) if such motion is necessary to correct manifest errors of law or fact upon which the judgment rests; (2) if such motion is necessary to present newly discovered or previously unavailable evidence; (3) if such motion is necessary to prevent manifest injustice; or (4) if the amendment is justified by an intervening change in controlling law." *Allstate Ins. Co. v. Herron*, 634 F.3d 1101, 1111 (9th Cir. 2011).[1]

Rule 60 relief is generally appropriate in six instances upon a showing of:  (1) mistake, surprise, or excusable neglect; (2) newly discovered evidence; (3) fraud; (4) a void judgment; (5) a satisfied or discharged judgment; or (6) extraordinary circumstances which would justify relief.  *School District No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993)(citation omitted).  Excusable neglect under Rule 60 refers to "cases of negligence, carelessness and inadvertent mistake." *Bateman v. U.S. Postal Serv.*, 231 F.3d 1220, 1224 (9th Cir. 2000).

Here, the Order to Show Cause (OSC) was filed on June 9, 2017, three days after the seal was lifted.  The OSC was entered three days later on June 12, 2017. The OSC was then presumedly mailed out using the normal mailing procedures. Since the opposition was due by June 23, 2017, this allowed eleven days to complete

---

[1] Rules referenced in the brief are to the Federal Rules of Civil Procedure unless otherwise noted.

the assignment.   However, Relator contends the OSC was mailed out late, which reduced the amount of time to file the opposition.   Relator contends he was only given eight days to file the opposition. Dec., ¶¶ 5-8.

To prove documents are mailed out late, Relator has attached a copy of the manila envelope that was received from the court containing the order of dismissal, but not the judgment.   The postmark on the manila envelope shows five days were lost before the document was even placed in the mail. Dec., ¶ 18, Exh. "C" – a copy of the outside of the manila envelope.   Furthermore, the problem is compounded by the fact that the court refused to grant Relator access to the CM/ECF system.   Dec., ¶¶ 7, 20, 22, Exh. "D" – copy of Application for CM/ECF system access.   These facts support an inference that the court was predisposed to a dismissal.

1.   Under Two Ninth Circuit Cases The 2010 Amendments To The Public Disclosure Bar Govern A Qui Tam Case Filed in 2017

The court contends that the pre-2010 version of the public disclosure bar applies, and cites to *Hughes Aircraft Co. v. U.S. ex rel. Schumer*, 520 U.S. 939, 945-946 (1997)(Hughes Aircraft).   Two recent Ninth Circuit decisions would disagree. See *Amphastar Pharmaceuticals Inc. v. Aventis Pharma SA*, No. 14-56382 n.7 (9th Cir. May 11, 2017) ("We analyze the statute as it existed when Amphastar first filed its complaint in 2009.") and *U.S. ex rel. Mateski v. Raytheon*, 816 F.3d 565, 569 n.7 (9th Cir. 2016)("Given that Mateski's suit was filed in 2006, the prior version of the statute governs here," and citing *Graham Cty. Soil & Water Conservation Dist. v.*

-4-

1   *United States ex rel. Wilson*, 559 U.S. 280, 283 n.1 (2010)(*Graham Cty.*).

2   Further, *Hughes Aircraft* gave a clue of the future when it said in footnote 4:

3

4   "Because both the allegedly false claim submission and the disclosure to
    the Government of information about that submission occurred prior to
5   the effective date of the 1986 amendments, we need not address *which of*
    *these two events constitutes the relevant conduct for purposes of our*
6   *retroactivity analysis*." (Emphasis added).

7

8   *Hughes Aircraft*, 520 U.S. at 946.   Here, the false claim submission occurred on

9   October 1, 2004, which was the date the Clery Act report was due for the 2003-2004

10
    school year.   The date of the disclosure to the Government of information about the
11

12  false claim occurred on the filing date of the Complaint, on Feb. 13, 2017.   This date

13  is after the effective date of the 2010 Amendments under the Affordable Care Act

14
    (ACA), which was March 23, 2010.   See *Graham Cty.*, 559 U.S. at 1400 n.1.   The
15

16  court is playing by the old set of rules.   This is an error of law that justifies

17  overturning the order of dismissal.

18
    The court's decision did not address the issue that *Hughes Aircraft* left
19

20  intentionally unanswered as to "*which of these two events constitutes the relevant*

21  *conduct for purposes of our retroactivity analysis*."   This issue was raised by the

22
    Relator in page one of the opposition to the OSC.   This is a novel issue of the law that
23

24  needs to be addressed by the court.

25  The court may claim that the 2010 amendments are not retroactive to attach to

26
    a conspiracy, however, a conspiracy is a continuing offense, and is treated differently
27

28  than other causes of actions.   As will be explained *infra*, this disparate treatment is

- 5 -

because the parties in a conspiracy, the co-conspirators, do not have an expectation of what law will apply given the fact that the conspiracy will transpire over several years.  No substantive rights in a conspiracy attach, or vest, during the pendency of the conspiracy.  Therefore, when viewing a conspiracy claim, the court should not consider the date the conspiracy started.  That date has no bearing.

A conspiracy is an odd duck.  The court did not address the unique traits of the duck.  Courts will apply conspiracy principles from criminal cases over to civil cases.  See *Livett v. F.C. Financial Associates* (1981) 124 Cal.App.3d 413, 419; *U.S. ex rel. Griffith v. Conn*, 117 F.Supp.3d 961, 987 (E.D.Ky 2015) (applying last overt act doctrine from criminal case to qui tam case); see also, *U.S. v. Harris*, 79 F.3d 223, 229 (2d. Cir. 1996), cert. denied, 519 U.S. 851, 117 S.Ct. 142 (1996)(finding no ex post facto clause violation by retroactive application of a statute to a criminal conspiracy that began prior to, but continued after, the effective date of the statute).

Courts have held that a "conspiratorial agreement that includes a payoff ... continues ... until the conspirators receive their anticipated economic profits." *United States v. Fletcher*, 928 F.2d 495, 500 (2d Cir. 1991)(citation omitted).  When liability is premised on a civil conspiracy, the statute of limitations does not commence until the  last overt act pursuant to the conspiracy has been completed.  *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773, 789.  Here, the last overt act referenced in the complaint is the meeting of the parties in late 2016 wherein the parties were to decide on how to get the spoils back to Harvard since the protracted litigation had stopped.

Comp., ¶ 17.  Thus, since the continuing nature of the conspiracy went past March 23, 2010, the effective date of the ACA amendments, the amendments should apply to the conspiracy.

The court provided no analysis on how they would decide a conspiracy claim under the FCA when the conspiracy straddled the 2010 Amendments to the public disclosure bar.  If the court provided the analysis, the opinion would be published.

2.   Under The 2010 Amendments The Court Lacks Authority To File A Rule 12(B)(1) Motion Sua Sponte

The 2010 amendments changed the public disclosure bar.  The bar is no longer jurisdictional and can only be raised in a motion to dismiss under FRCP 12(b)(6).  See 31 U.S.C. § 3730(e)(4)(A)(2010); *United States ex rel. Advocates for Basic Legal Equity, Inc.* v. U.S. Bank, N.A., 816 F.3d 428, 433 (6th Cir. 2016)(discarding rule 12(b)(1) as basis for dismissal under ACA amendments, and replacing with 12(b)(6)).  Only a *party* has the right to file a motion to dismiss under Rule 12(b)(6).  The court relied upon the pre-2010 amendment to file the motion to dismiss under Rule 12(b)(1).  This was improper.  The old rules have now been changed, and the public disclosure bar must be brought in a motion to dismiss by a party.  The *Amphastar* and *Mateski* courts want courts to use the version of the statute in place at the time the complaint was filed.  This was clear error or manifest injustice.

The court filed the order of dismissal after two separate motions to dismiss were filed - one by defendant Harvard and one by defendant Facebook.  In footnote

1    one of the order, the court stated the two filed motions (Dkt. Nos. 41, 42) were denied

2    as moot.   As a result of the OSC being improper, the court should allow the

3

4    defendants' two motions to be heard.    The court should also allow the two

5    oppositions that Relator sought to file with the court to be accepted as court filings,

6    when Relator's runner service, Arrow Attorney Assistance, attempted to file the

7

8    documents on September 7, 2017.[2]  See Dec., ¶¶ 14-17, Exhs. "A" and "B."

9         As the court is aware, after reading and considering both defense motions, the

10

11   defendants have raised the public disclosure bar defense.   Notwithstanding, the court

12   has not allowed Relator to have an opportunity to rebut the case authority raised by

13   the defendants. The court even cites to the *Hong* case, which was cited in Facebook's

14

15   motion.   FB Mtn to Dismiss 11:1-2; *United States ex rel. Hong v. Newport Sensors,*

16   *Inc.*, No. SACV 13-1164-JLS (JPRx), 2016 WL 8929246 (C.D. Cal. May 19, 2016).

17   Defendants have been given two bites at the proverbial apple.   This is fundamentally

18

19   unfair and is a violation of procedural and substantive due process. See *Goldberg v.*

20   *Kelly*, 397 U.S. 254, 267-268 (1970)(party must be given an opportunity to defend by

21   presenting its own arguments and evidence); *United States v. Salerno*, 481 U.S. 739,

22

23   746 (1987)(requiring fairness under procedural and substantive due process of the

24   Due Process Clause).

25   / / /

26

27   _____

28   [2] Relator used as the runner service Arrow Attorney Assistance.  Arrow provides concierge legal services to attorneys
     practicing in Los Angeles, Orange County, and the Inland Empire. Arrow can be reached at (909) 624-8377.

Due process is a flexible doctrine and calls for such procedural protections as the particular situation demands.   See *Mathews v. Eldridge*, 424 U.S. 319, 334 (1976).   Here, the court's denial of Relator's right to present rebuttal arguments violates due process.   Further, a core element of procedural due process is that the decision-maker must hold the balance nice, clear and true.   *Tumey v. Ohio*, 273 U.S. 510, 532 (1927).   The issue of impartiality is raised when the court appeared to be predisposed to make a "quick-trigger" dismissal on June 9, did not allow adequate time for an opposition to be prepared, but allowed the defendants adequate time to research and file their briefing, which was reviewed and then used by the court in the order of dismissal, and then foreclosed and denied Relator's right to file an opposition to the defendants' briefing.

Here, in the oppositions, Relator has some documents which need to be considered by the court and reviewed for the purpose of taking judicial notice.   See Exhs. "A" and "B" (RJN).   It would be patently unfair if the 2 opposition briefs and the RJN documents were not considered by the court, since it will perfect the record.

3.   The Federal Government Is Prosecuting This Case Due To The Secret Seal They Put In Place And They Have The Power Of Veto

If the federal government prosecutes the case, the public disclosure bar does not apply.   See 31 U.S.C. §3730(e)(4)(A).   Relator contends that the federal government is prosecuting this case in secret from the very beginning because they have placed a seal over the entire case.   No news media is allowed to run a story on

the case despite the fact that Relator is seeking the forfeiture of all of Facebook's assets, which would cause the two billion Facebook accounts to be closed. Under *Prather*, a party can obtain leave of court to conduct limited discovery to prove whether the public disclosure bar is applicable. *Prather v. AT&T, Inc.*, 847 F.3d 1097, 1101 (9th Cir. 2017). Relator seeks leave of court to take a deposition of the PMK who can address whether the seal is in place, and whether the federal government is prosecuting the case.

Further, the court may look negatively on the Notice Declining Intervention (Notice) that was filed by the Department of Justice (DOJ), and interpret therefrom that the government has no interest in the case. However, the Notice was filed by attorneys who lacked authority to work the case. When the damages in a case exceed $5,000,000, or if there are novel issues, the local attorneys at the DOJ office are ineligible to work on the case. See U.S. Attorneys' Manual (USAM), 9-42.010. The value of Facebook is in the billions of dollars, which fact can be judicially noticed.

This fraud claim the federal government missed, and through Relator's efforts the details of the fraud have been brought to their attention. A key fact the government failed to consider is that Relator learned after filing the complaint that back in October of 2010, Harvard allowed defendant Mark Zuckerberg to go back on Harvard's computer servers to clean things up, and delete emails from the servers that were sent after October 31, 2003. Dec., ¶ 23. This date ties in to the critical date the Facemash program was complete. See Comp., ¶ 28. This was an overt act in

furtherance of the conspiracy, which allegation can be added to an amended complaint as new evidence, and is a ground that justifies relief. Dec., ¶¶ 24-28.

More importantly, the government did not know this new fact, because it came from discovery in the civil litigation between Paul Ceglia and Mark Zuckerberg that was under seal by a protective order. Dec., ¶ 25. When the complaint is amended to allow for this new evidence to be alleged, the court would determine jurisdiction based upon the allegations in the amended complaint, which supersedes the prior complaint. See Fed.R.Civ.P. 15(c)(1)(B); *U.S. ex rel. Hartpence v. Kinetic Concepts, Inc.*, 792 F.3d 1121, 1125 n.2 (9th Cir. 2015); *Drakatos v. RB Denison, Inc.*, 493 F.Supp. 942, 945 (D.Conn. 1980)(allowing amendment to cure a defective statement of jurisdiction). Relator contends the amended complaint containing this new evidence that was unknown to anyone at the time of filing relates back to the date the complaint was filed and would therefore block the public disclosure bar.

Further, there is the risk that the whole justice system will collapse if the defendants are not charged with committing a major fraud under 18 U.S.C. §1031, and if the Attorney General does not formally take over the case. These defendants are not above the law. The seal is in place to stop the revolution.[3] Further, this case parallels the movie *It's A Mad, Mad, Mad, Mad World* (United Artists 1963), where

---

[3] The news that Zuckerberg and Harvard are above the law would definitely be put to good use by the occupants and patriots of the tents that were located directly in front of City Hall in Baltimore, Maryland in Trumpville in August 2017. The occupants are protesting and one of their demands is they want their criminal records expunged. Zuckerberg can assist the Have-Nots because he is a qualified expert on the use of the delete key. See ZeroHedge, Tyler Durden, "Baltimore's Homeless Erect Modern Day 'Hooverville' Tent City On Front Lawn Of City Hall" (Aug 17, 2017 6:55 PM)(See poignant video interview with Shorty, one of the organizers). Baltimore has since moved the patriots.

- 11 -

there is no law when there is a race for the buried treasure.    The government's position contradicts itself and is based upon pure madness.

The court claims the information that Relator relied upon fits within "news media." The False Claims Act (FCA) does not define the terms "news media." The phrase is defined in the federal regulations. A representative of the news media is a person employed at a (1) newspaper with a general circulation and that publishes legal notices; (2) a national news magazine; (3) a national or international news service; or (4) a radio or television news program whose primary purpose is to report the news. See 28 C.F.R. §540.2; see e.g., *Graham Cty.*, 130 S.Ct. at1410 (including within "news media" channel a large number of local newspapers and radio stations).

And yet, the government is blocking this case from being run as a story in the "news media." Moreover, neither the defense counsel nor the court can point to a single story about this case on CNN, Fox News, the New York Times, the Washington Post, or a major newspaper. Indeed, the Los Angeles Times is a major newspaper, and is located less than 500 feet from the court's doorstep. Even the powerful Los Angeles Times cannot run a story. The court can take note of this.

Therefore, Relator should be entitled to obtain limited discovery to prove that the government is prosecuting this case, since if they are doing so, the public disclosure bar defense is moot. The federal government may want to exercise the power of veto, and discovery would answer that question. See 31 U.S.C. § 3730(e)(4)(A)(2010). Here, the jurisdictional defects can be cured with discovery

1   and through further amendment.  The court needs to make sure that the government

2   as a matter of law is not prosecuting this case or intends to exercise the veto.

3

4        4.      The Clery Act Reports, A Book, A Movie, and An Article In The
                 Harvard Crimson Each Fail To Constitute News Media
5

6        In the decision, the court lumped all of the sources of the relevant information

7   into one group called "news media."  In FCA cases, the courts spend a considerable

8   amount of time reviewing each source to make sure it fits within one of the channels

9
    that constitutes a public disclosure under 31 U.S.C. §3730(e)(4)(A).  Here, the court
10

11  failed to take the time to do the proper analysis.  This is clear error.

12       In the complaint, the relevant information was based upon four sources:  [1] the

13
    Clery Act reports, Comp. ¶¶ 13- 14, 29; [2] a book of fiction book written by Ben
14

15  Mezrich, Comp. ¶ 32; [3] a movie called the Social Network, Comp. ¶ 34; and [4]

16  news articles in the *Harvard Crimson*, Comp. ¶ 13.[4]  For the reasons explained below,

17
    none of the four sources listed fit within the definition of news media.
18

19       The public disclosure bar is a misnomer.  It is not what it sounds like.  Just

20  because the information is being discussed in public, does not mean the information
21

22  fits within the channels that Congress specially set aside as constituting a public

23  disclosure.  The public disclosure bar is a defense that must be applied exactly to the

24  terms that were set by Congress.
25

26  / / /

27
    _____
28  [4] The Complaint also cites to the *New York Times* and the *Pittsburgh Post-Gazette* as examples of FCA cases.  Comp., ¶
    35.  These two newspapers would qualify as news media since both are newspapers with a general circulation.

## A.  The Clery Act Reports

The first issue in the analysis of the Clery Act report is to determine who originated or prepared the report.  The answer is defendant Harvard prepared the Clery Act report.  <u>This is as a matter of law</u>.  See 20 U.S.C. §1092(f)(1).  The U.S. Dept. of Education in turn made the Harvard report available to view on a website. The court did not claim in the order that the Harvard report was a government report. Instead, the court claimed the Clery Act report was "news media."  However, the court has not explained how the Harvard report fits the definition of news media (i.e., (1) newspaper with a general circulation; (2) a national news magazine; (3) a national or international news service; or (4) a radio or television news program whose primary purpose is to report the news).

The court makes the bold statement that information already in the public domain is a public disclosure by citing to *U.S. ex rel. Hastings v. Wells Fargo Bank, Nat. Ass'n* (Inc.), No. CV 12-03624 DDP (SSx), 2014 WL 3519129 (C.D. Cal. July 15, 2014).  This is the same as adding a new channel to the public disclosure bar (i.e., anything in the public domain).  Congress was very clear that in order to qualify as a public disclosure it had to fit within one of the listed channels.  The U.S. Supreme Court has already weighed in on adding new channels.  In *Graham Cty.*, the U.S. Supreme Court stated:

> "[T]he FCA's public disclosure bar . . . deprives courts of jurisdiction over qui tam suits when the relevant information has already entered the public domain through *certain channels*." (emphasis added).

- 14 -

*Graham Cty.*, 130 S.Ct. at 1401.  The public domain option is not one of the "certain channels."  The Ninth Circuit repeated the rule in *Mateski*:

> "The statements Raytheon relies upon in invoking the bar occurred through the *channels specified in the statute*—news media, congressional hearings, and GAO reports—all of which were public."

*Mateski*, 816 F.3d at 570.  Congress did not say that information on the Internet qualifies as news media.  And no appellate court has made the determination.  The court cites to a district court opinion for the authority in *Hong*; however, a district court opinion is not binding on another district court.  See *Intamin, Ltd. v. Magnetar Technologies Corp.*, 623 F.Supp.2d 1055, 1075 (C.D. Cal. 2009).  Second, *Hong* lacks the proper reasoning and did not discuss whether this legal concept fits within the parameters of the statute, or satisfies legislative intent.  Further, the court failed to explain how the Clery Act report meets the definition of news media.[5]

The court cites to *Hastings*, another district court opinion, for the proposition that "identifying the legal consequences of information already in the public domain does not constitute discovery of fraud."  In *Hastings*, the court found the information was disclosed under many of the channels in the statute:  (1) by reports from the Housing and Urban Development; (2) reports from the General Accounting Office; (3) other federal reports; (4) Congressional hearings; (5) Federal Register notices; (6) in judicial opinions from federal cases; and (7) and in newspaper articles.  *U.S. ex rel.*

---

[5] Information on district court cases were received courtesy of Mr. Nick Dahlen, Account Executive, WestlawNext, Thomson Reuters, Phone: 651-244-6312, as part of a free trial offer.

1   *Hastings v. Wells Fargo Bank, Nat. Ass'n (Inc.)*, No. CV 12-03624 DDP (SSx), 2014

2   WL 3519129 (C.D.Cal. July 15, 2014).   Any one of these channels meets the

3

4   definition of public disclosure.   And thus, in *Hastings*, the information is in the public

5   domain because it satisfies one of the channels.   Here, none of the information at

6   issue was found in a government-prepared report, a Congressional hearing, a judicial

7

8   opinion from a federal case, or from a qualified newspaper.   Hence, the public

9   disclosure bar is not applicable.

10

## B. The Book of Fiction And The Movie

11

12          The disclosure at issue is the statement by defendant Eduardo Saverin that

13   Zuckerberg committed three burglaries, which statement was found in a book of

14   fiction that was purchased.   Comp. ¶¶ 32-34.   The book was *purchased* and was not

15

16   found on the Internet.   *Id.*   The court offers no explanation as to how the book of

17   fiction falls within the category of news media.   Thus, since the court failed to

18

19   provide specific reasons why the book of fiction meets the news media prong, the

20   public disclosure bar does not apply to a book.      If Congress wanted a book to

21   qualify as a news source they would have included it in the definition of news media.

22

23          Hypothetically, assume there are 53.1 million books in the New York Public

24   Library.   The court wants to propose a rule of law that converts all of these books into

25   news media simply because they are in the public domain. This is the wrong

26

27   conclusion.   Congress wants bounty hunters to scour all sources in search for fraud

28   that do not fit into the three enumerated sections of § 3730(e)(4)(A).   Books are fair

- 16 -

1   game.  Books do not fall within one of the three channels.[6]  For the same reasons the

2   book does not qualify as a public disclosure, the same can be said about the movie,

3

4   *The Social Network*.  People do not generally go to the movies to obtain their news.

5   Thus, since the court failed to provide specific reasons why the movie meets the news

6   media prong, the public disclosure bar does not apply to a movie.  Further, both the

7

8   book and movie came out after March 23, 2010, the effective date for the new

9   amendments to the public disclosure bar.  Thus, the new amendments should apply to

10  these two sources of information.

11

12              C.  An Article In The Harvard Crimson

13      The *Harvard Crimson* is not a newspaper with a general circulation that posts

14  legal notices like the *New York Times* and the *Pittsburgh Post-Gazette*.  See 28 C.F.R.

15

16  § 540.2(1).  Thus, the article in the *Harvard Crimson* does not meet the definition of

17  news media.   Indeed, Relator has shown that not one of the four sources of

18  information that were relied upon to make the false claim constitute a public

19

20  disclosure.  Hence, the public disclosure is not a bar.

21      The court wants to take the bar to new heights.  However, courts will not give

22  the public disclosure bar a broader effect than that which appears in its plain

23

24  language.  See *United States ex rel. Williams v. NEC Corp.*, 931 F.2d 1493, 1499-

25  1500 (11th Cir. 1991).  The three channels of the public disclosure bar "drive at the

26

27  ─────────────────────
[6] *Patience* and *Fortitude*, the twin lions posted as sentries in front of the NY Public Library, and the librarians inside,
28  would disagree with the court's ruling that all of the 53.1 million books are no longer books, but are now news media.
    See https://www.nypl.org/help/about-nypl/library-lions.

**MOTION FOR RELIEF UNDER FRCP RULES 59(e) AND 60(b)**
**CASE NO. 2:17-CV-01145-PA-FFM**

same end:  specifying the types of disclosures that can foreclose qui tam actions."
*Graham Cty.*, 130 S.Ct. at 1404.  The court here created a fourth channel when it held

information in the public domain can disqualify a qui tam case.  This is an error in the

case, and shows manifest injustice.  The list of channels in the statute, 31 U.S.C. §

3730 (e) (4)(A), is specific and exhaustive.  See *Williams*, 931 F.2d at 1499-1500.

Furthermore, as a general rule, the news media would be reluctant about

publishing an unverified allegation that a felony had been committed, since that

would be defamation.  There are <u>not</u> two sources to support Saverin's allegations.

In Facebook's motion to dismiss, which the court reviewed and read prior to

issuing its judgment of dismissal, Facebook danced around the proof required to

show what channel the book would fall into.  In conclusion, the public disclosure bar

is a giant misnomer catching many flies in its web.  The court is in error by holding

that all privately-prepared reports, all books, all movies, and all articles written on a

local school's newspaper qualify as news media.

5.  <u>The Public Disclosure Bar Does Not Apply When The X and Y
Factors Are Missing</u>

Under § 3730(e)(4)(A),

"[i]f there has been a disclosure, the content of that disclosure must
consist of the allegations or transactions giving rise to Relator's claim. . .
. In a fraud case, X and Y stand for a misrepresented state of facts and a
true state of facts.  Thus, for the suit to be barred, Defendants must show
that its essential elements, both the alleged truth and the allegedly
fraudulent statements, were publicly disclosed <u>via an enumerated
source</u>."

*United States ex rel. v. Catholic Healthcare West*, 445 F.3d 1147, 1152 (9th Cir. 2006)(internal citations omitted)(Emphasis added), abrogated on other grounds by *Schindler Elevator Corp. v. US ex rel. Kirk*, 131 S. Ct. 1885 (2011).

Here, there were no public statements made that Harvard submitted a false claim to the government.  Thus, the public disclosure bar will only be met if the "transaction" prong is satisfied.  The court did not disclose an enumerated source that proves a misrepresented state of facts were disclosed (the X factor), or that a true state of facts were disclosed (the Y factor).  As discussed *supra*, the Clery Act reports, the book, the movie, and the article from the Harvard Crimson do not qualify as an enumerated source.  The court should point out the sources that do qualify.

More importantly, the court's opinion is contradicted by *Graham Cty*, which held that news media is "distinctly *nonfederal* in nature."  *Graham Cty*, 130 S.Ct. at 1404 (Emphasis added).  The Clery Act website is operated by the U.S. Department of Education, a federal agency, and is therefore federal in nature.  This fact can be judicially noticed.  Thus, the Clery Act reports are not considered to be news media as a matter of case law.[7]  Regretfully, so ends the reign of *Hong*, and its news media bootstrap.  In addition, the Relator in *Catholic Healthcare*, Dr. Patricia Haight, was an outsider, and she did not work for the defendants.  Haight relied to a great extent upon secondhand information.  Similar to the Relator Hill, Haight combed through documents that she obtained.  The Ninth Circuit even praised Haight:

---

[7] The Clery Act website provided Relator access to a copy of the Clery Act report that was prepared by Harvard.

- 19 -

> "Haight performed precisely the sort of investigative work that the qui tam provisions of the FCA encourage in order to promote detection of fraud against the government."

*Catholic Healthcare*, 445 F.3d at 1155-1156.   Haight was not disqualified as an opportunistic Relator on the theory that all she did was connect the dots or describe the alleged circle of facts.   Further, the allegations of fraud in the Complaint are different in kind and degree than what was publicly disclosed, and are much more precise.   This will block the public disclosure bar.   See *Mateski*, 816 F.3d at 578. Comparing the information *allegedly* out there to the fraud claim against the government is like comparing apples to Powerball tickets.   At most, there may be an argument that the complaint is similar only at a high level of generality, but the *Mateski* court said that would not trigger the public disclosure bar.   *Id.* at 580.

Here, the court pulled a "quick trigger" by finding the public disclosure bar applied three days after the seal had been lifted.   *Mateski* disavowed the "quick trigger" approach finding that a reviewing court must take the time to analyze with some specificity the similarity between the allegations in a qui tam complaint and prior disclosures.   *Id.*   Here, the court's failure to complete the analysis and provide the required specificity in the opinion is clear error and manifest injustice.

> 6.   <u>There Is Insufficient Evidence For The Government To Have Found Fraud</u>

Further, the case at bar is like the *Foundation Aiding* case cited in *Mateski*:

> "'[I]t is impossible to say that the evidence and information in the possession of the United States at the time the False Claims Act suit was

brought was sufficient to enable it adequately to investigate the case and to make a decision whether to prosecute. (citations omitted)."

*Mateski*, 816 F.3d at 574. The allegations in *Foundation Aiding* were "completely different from prior public statements." *Id.* So too are the allegations here. The allegations are completely different from prior public statements. No one has accused Harvard of submitting a false claim to the government. And the court has not advanced that argument.

Here, from the complaint, Eduardo Saverin said that Zuckerberg committed three burglaries at Harvard. On the Clery Act reports prepared by Harvard, when accessed from the U.S. Department of Education's website, Harvard lists that 451 burglaries occurred on campus in 2003. See https://ope.ed.gov/campussafety/#/. Therefore, a government investigator would logically conclude that the three burglaries committed by Zuckerberg were properly noted in the 451 figure.

The evidence from the Clery Act reports is vague and innocuous ("There are no data to download."). Dec., ¶ 29. A federal investigator is not going to conclude that a fraud has been committed, given the fact that there appears to be partial compliance with the law. A federal investigator may have concluded that some mistakes were made in the recordkeeping, but they would not have been able to easily see the fraud. There was nothing to tip the investigator off that the burglaries were even discussed at the admin hearing. Defendant Eduardo Saverin made the statements in 2009-2010, years after being involved in protracted litigation with

Zuckerberg, and then only after losing the case, and years after the Nov. 2003 administrative hearing at Harvard. Saverin has provided no evidence to support his accusation. The accusation is unverified. Also, there is insufficient evidence for the government investigator to conclude there was a conspiracy, or let alone one that has lasted fourteen years. And the statute of limitations would have run out. Facebook said: "Relator claims to have uncovered a sinister plot of Hollywood proportions."[89]

Thus, there is a disputed question raised as to whether there was sufficient evidence to put federal investigators on notice of the fraudulent claim submitted by Harvard, or the fact that there even was a conspiracy. Since there is a disputed question of fact, the court cannot grant a motion to dismiss under rule 12(b)(6). *Scott v. Kuhlmann*, 746 F.2d 1377, 1378 (9th Cir. 1984).

7. <u>A Conspiracy Is A Continuing Offense And Is Not Judged Under The FCA By When The Conspiracy Starts But When The Conspiracy Ends</u>

Also, the court fails to distinguish the continuing nature of a conspiracy. The *Hughes Aircraft* court did not address a conspiracy claim. The return of the spoils happened in July 2017, and the complaint can be amended to include this fact.

Further, the *Hughes Aircraft* case did not decide a question about a "straddler" fact pattern. They punted on that issue, and said there may be a case down the road where they would have to address the issue. <u>This is that predicted case.</u> The

---

[8] See Facebook's Mtn to Dismiss 1:7-9.
[9] The dichotomy and juxtaposition of two worlds, where some Americans go to jail and others walk free, or live in tents on perfectly-manicured lawns instead of cruising on the Digital Highway, cries out and speaks volumes for expression.

**MOTION FOR RELIEF UNDER FRCP RULES 59(e) AND 60(b)**
**CASE NO. 2:17-CV-01145-PA-FFM**

unanswered issue was T'd up for the court.  But, the court provided no analysis for

the Ninth Circuit to review, which will cause the appellate court to send the case back

down.  The key case the court uses is *Hughes Aircraft*, and that case quotes from

*Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994) in providing the reasons

against retroactive application of the 1986 amendment to the FCA:

> "[E]very statute, which takes away or impairs vested rights acquired
> under existing laws, or creates a new obligation, imposes a new duty, or
> attaches a new disability, in respect to transactions or considerations
> already past, must be deemed retrospective.'

*Hughes Aircraft*, 520 U.S. at 947.  Those reasons for not allowing retroactive

application are not present in a conspiracy claim since the amendment does not take

away or impair any vested rights, create a new obligation, impose a new duty, or

attach a new disability in respect to the transactions and overt acts that constitute the

conspiracy.  Furthermore, the conspiracy is not "already past."

According to the allegations in the complaint, which have to be accepted as

true at this stage, the conspiracy was alleged to not be complete.  Comp. ¶ 18.

Therefore, there is no evidence that the transaction, the conspiracy, has been

completed prior to the effective date of the 2010 amendments.  The retroactive

application would not take away or impair vested rights because a conspiracy claim

does not accrue until the last overt act occurs.  Thus, the concerns raised in *Hughes*

*Aircraft* and *Landgraf* are not applicable to the retroactive application of the 2010

amendments to an on-going conspiracy to commit fraud.

In criminal cases that involve a conspiracy, a change in the law can be applied retroactively.   See *U.S. v. Harris*, 79 F.3d 223, 229 (2d. Cir. 1996)(citations omitted), cert. denied, 519 U.S. 851, 117 S.Ct. 142 (1996).   Principles from a criminal conspiracy are applicable to a civil conspiracy.   Thus, in civil cases that involve a conspiracy, a change in the law can be applied retroactively.   Further, with civil conspiracy, a cause of action only accrues on the date of the commission of the *last overt act* in pursuance of the conspiracy.   See *Wyatt*, 24 Cal.3d at 789.   The court's decision conflicts with the reasoning in *Hughes Aircraft* and with state law.

The court has not even addressed the unique features of a conspiracy count in the opinion.   The court has not provided any authority to support the contention that a conspiracy claim that straddles the 2010 amendments cannot use the amendments to cover the entire period of the conspiracy. *Hughes* has been distinguished.   This is an error of law because the opinion leaves the court's reasoning off of the order.

8.   Relator Is An Original Source Under The New Definition

The court did not apply the new definition of original source under the 2010 amendments for 31 U.S.C. § 3730(e)(4)(B)(2010).   The new definition is retroactive. See *U.S. ex rel. Bogina v. Medline Indus., Inc.*, 809 F.3d 365, 369 (7th Cir. 2016)(finding 2010 amendments in subsection (B) are retroactive).   The new definition allows a relator to qualify as an original source even if that information was obtained indirectly (i.e., secondhand). See *U.S. v. Kiewit Pacific Co.*, 41 F.Supp.3d 796, 807 (N.D.Cal. 2014).   The court said in the order that the information was not

- 24 -

obtained firsthand. Yet, the information can now be secondhand. *Mateski* cited to *Bogina*, and did not overrule the retroactivity point of law. *Mateski*, 816 F.3d at 569 n.7. Thus, Relator could rely on the book, the movie, and the report from Harvard as secondhand information and as a basis for the false claim. This court's reasoning on this point was clear error.

## Conclusion

No court has addressed whether in a FCA conspiracy the 2010 amendments are retroactive. This is a novel issue. The public disclosure bar only applies when the relevant information has already entered the public domain through certain enumerated channels. Here, both the X and Y factors are missing because the information was not published in a recognized channel. Further, the court did not address the reasons why the relevant information from the four sources fit within the news media channel. And the court cannot simply add a fourth channel to the public disclosure bar (i.e., information in the public domain or found on the Internet).

The lions Patience and Fortitude are not asleep, and they will continue to guard and protect a library full of books, which is being falsely labeled as a news media repository. In sum, the request for relief from the judgment should be granted.

Dated: September 16, 2017

*Charles E. Hill*

Charles E. Hill
Attorney for Relator,
Charles E. Hill, In Pro Per

- 25 -